# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SEAN HANKS, # M-48627, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17-cv-330-SMY ) |
| CHARLES HECK, and MARCUS MYER, | ) ) ) |
| Defendants. | ) ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for review of Plaintiff's First Amended Complaint (Doc. 10), which was timely filed at the direction of the Court. (Doc. 8). The original Complaint was dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted.

Plaintiff is currently incarcerated at Pontiac Correctional Center ("Pontiac") and brought this civil rights action pursuant to 42 U.S.C. § 1983 based on events that occurred while he was confined at Pinckneyville Correctional Center ("Pinckneyville"). Plaintiff asserts that he suffers from serious mental illness and claims that he was improperly punished with disciplinary segregation. The disciplinary action was later expunged. Applying the requirements of § 1915A to the First Amended Complaint, the Court concludes that Plaintiff's due process claim merits further review.

## The First Amended Complaint (Doc. 10)

On June 28, 2015, while Plaintiff was at Pinckneyville, Adjustment Committee members Heck and Myer found him guilty of damage/misuse of property. Plaintiff was not given a

1

hearing and was not present for the determination of guilt. (Doc. 10, p. 9). Without a hearing, he was unable to call witnesses or present a defense. (Doc. 10, p. 13).

Plaintiff was punished with 4 months in disciplinary segregation, lost 2 months of good conduct credit and was ordered to pay restitution. Approximately 3 weeks after the disciplinary finding, Plaintiff was transferred from Pinckneyville to Dixon Correctional Center ("Dixon"). He was on "Emergency Mental Health Observation" because he was "unstable." (Doc. 10, p. 9).

While at Dixon, Plaintiff submitted a grievance claiming that the disciplinary proceeding violated his due process rights. The Administrative Review Board ("ARB") ultimately ruled in Plaintiff's favor and recommended that the disciplinary action be expunged and his good conduct credits be restored. The ARB confirmed that the final summary of Plaintiff's disciplinary proceeding did not reflect that Plaintiff had a right to a mental health representative during the hearing. (Doc. 10, p. 10). Plaintiff notes that he had no hearing at all. Despite the success of Plaintiff's grievance, he had already served the entire 4 months of segregation by the time the ARB ruled. (Doc. 10, p. 11).

Plaintiff asserts that the conditions of his 4-month segregation confinement were substandard and amounted to cruel and unusual punishment. He was confined to his cell for 24 hours per day at least 4 days per week. (Doc. 10, pp. 11, 14-15). The segregation environment combined with his mental health condition(s) caused Plaintiff to decompensate, mutilate himself, experience panic attacks and prompted staff to put him on suicide watch. *Id.* The poor condition of his mattress[1] caused him to develop a rash that covered large parts of his torso. A large part of Plaintiff's segregation time was served at Dixon, where he did not receive adequate mental

---

[1] Plaintiff states that his mattress was "covered with spots of blood, urine, feces, mold, etc." (Doc. 10, p. 17).

health services. The lack of contact visits, phone privileges, haircuts and "grooming measures"[2] contributed to Plaintiff's distress and decompensation. He was not provided with adequate medical or dental care. (Doc. 10, p. 12). In an attached affidavit, Plaintiff states that he suffered from an unspecified painful dental condition but received no pain medication. (Doc. 10, p. 16).

Plaintiff seeks compensatory and punitive damages. (Doc. 10, p. 23).

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the First Amended Complaint, the Court shall divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Fourteenth Amendment claim for deprivation of a liberty interest without due process against Heck and Myer, who found Plaintiff guilty of a disciplinary infraction and punished him with segregation, without allowing Plaintiff to be present at a hearing, submit a defense, or call witnesses;
>
> **Count 2:** Eighth Amendment claim for subjecting Plaintiff to cruel and unusual punishment by confining him in punitive segregation while he suffered from a serious mental illness.

Count 1 shall proceed for further review. Count 2 shall be dismissed without prejudice.

## Count 1 – Deprivation of a Liberty Interest without Due Process

Plaintiff clarifies in the First Amended Complaint that Heck and Myer did not permit him to be present at the disciplinary proceeding where they found him guilty. He alleges that as a result, he was not afforded the most basic due process protection before he was punished with segregation.

---

[2] Plaintiff claims he was denied basic hygiene supplies for an unspecified period of time. (Doc. 10, p. 16).

The essential requirements of due process are notice and an opportunity to be heard. *See, e.g.*, *Goss v. Lopez*, 419 U.S. 565, 579, (1975) (at a minimum, due process requires "*some* kind of notice and . . . *some* kind of hearing") (emphasis in original); *Wolff v. McDonnell*, 418 U.S. 539, 557-558 (1974). In *Wolff*, the Supreme Court enunciated the minimal procedural due process protections that must be provided to a prisoner in disciplinary proceedings in which the prisoner loses good time, is confined to a disciplinary segregation, or is otherwise subjected to some comparable deprivation of a constitutionally protected liberty interest. *Id.* at 556-572.

> *Wolff* required that inmates facing disciplinary charges for misconduct be accorded [1] 24 hours' advance written notice of the charges against them; [2] a right to call witnesses and present documentary evidence in defense, unless doing so would jeopardize institutional safety or correctional goals; [3] the aid of a staff member or inmate in presenting a defense, provided the inmate is illiterate or the issues complex; [4] an impartial tribunal; and [5] a written statement of reasons relied on by the tribunal. 418 U.S. at 563-572.

*Hewitt v. Helms*, 459 U.S. 460, 466 n.3 (1983). In addition, a disciplinary decision must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994).

Here, because Plaintiff was not afforded a hearing, he had no opportunity to call witnesses or present a defense. At the pleading stage, these allegations suggest that the disciplinary proceedings conducted by Heck and Myer did not comply with due process requirements.

As discussed in this Court's Order reviewing the original Complaint, even if a disciplinary proceeding runs afoul of the *Wolff* due process protections, an inmate may pursue a claim for deprivation of a liberty interest without due process only under narrow circumstances. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). Specifically, an inmate has a due process liberty interest in being in the general prison population only if the conditions of the disciplinary confinement impose "atypical and significant hardship[s] . . . in

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner*, 128 F.3d at 1175.

Courts must consider two elements when determining whether disciplinary segregation conditions impose an atypical and significant hardship: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion*, 559 F.3d at 697-98 (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

Here, the 4 months that Plaintiff spent in disciplinary segregation is long enough to trigger an inquiry into the conditions of his segregation confinement. The First Amended Complaint indicates that Plaintiff was subjected to prolonged isolation in his segregation cell. The allegations also suggest that the isolation aggravated Plaintiff's mental health condition(s) to the degree that he began to harm himself and to have suicidal thoughts and panic attacks. At the same time, Plaintiff alleges that he was not provided with necessary mental health services.

5

Additionally, Plaintiff suffered a rash which he alleges was caused by the unclean mattress in the cell, and did not receive adequate medical or dental care. While restrictions on visiting and phone privileges would not ordinarily be considered an atypical or significant hardship, in this case, they may have augmented the effects on Plaintiff of having increased limitations on his contacts with other people, whether inside or outside of the prison.

In light of Plaintiff's mental health issues (which he alleges Heck and Myer knew about), the conditions he endured in punitive segregation could arguably amount to "atypical and significant" hardships. The claim in **Count 1** against Heck and Myer for deprivation of a liberty interest without due process shall therefore proceed for further consideration.

### Dismissal of Count 2 – Cruel and Unusual Punishment

The segregation conditions described above may also support an Eighth Amendment claim. In order to sustain a claim for a violation of the Eighth Amendment's cruel and unusual punishments clause, a plaintiff must first show that the conditions denied him "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A second, subjective element requires a showing that the defendant had a culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Farmer*, 511 U.S. at 837, 842.

The conditions Plaintiff describes could arguably meet the objective element of a cruel and unusual punishment claim. However, it appears that the named defendants, both of whom are Pinckneyville officials, were not directly responsible for maintaining or correcting the conditions at Dixon, where Plaintiff served most if not all of his 4 months in segregation. In order to satisfy the subjective element of his claim, Plaintiff must identify the officials who were made aware of the unconstitutional conditions in his segregation cell and yet failed to remedy the

risks to Plaintiff's health and/or safety created by those conditions. Further, any responsible Dixon officials would not be amenable to suit in this judicial district, because Dixon is located within the Northern District of Illinois. If Plaintiff wishes to pursue the claim in Count 2 against Dixon officials, he could file a separate action in the Northern District or, if he submits an amended pleading in this case naming the responsible parties at Dixon, the claim could be severed from this case and transferred to the proper district court.

At this juncture, **Count 2** will again be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Disposition

**COUNT 2** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

The Clerk of Court shall prepare for Defendants **HECK** and **MYER**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 10), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending

7

the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to **United States Magistrate Judge Reona J. Daly** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Daly for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **REMINDED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: November 30, 2017**

                s/ STACI M. YANDLE
                United States District Judge